Jones, Chief Judge,
delivered the opinion of the court:
This is a suit under the Contract Settlement Act of 1944 (41U. S. C. Secs. 117 and 113).
Plaintiff’s claim under Section 117 of the act was rejected by the Appeal Board of the Office of Contract Settlement.
This case is an appeal to the Court of Claims under Sections 113 and 114 of the Contract Settlement Act.
The facts are set out in detail in the court’s findings of fact. Briefly they are as follows:
In September 1941 Albert A. Kalo, president of plaintiff corporation, called at the office of the Zone Constructing Quartermaster at Columbus, Ohio, tó present a plan for supplying gas to Fort Knox, Kentucky. Mr. Kalo discussed the matter with Lt. Col. Boss E. Windom, who was in charge of the Repairs and Utilities Branch. At that time the Constructing Quartermaster was not considering any change in the source of the gas supply then being used to furnish Fort Knox. Mr. Kalo outlined a plan to furnish gas at a price of 25 cents per thousand cubic feet, which was considerably lower than the rate then being paid for gas at Fort Knox. He was told to present his plan in writing. Some time previously another company had presented to the Commanding Officer at Fort Knox a proposal which had been forwarded to the Quartermaster General’s Office in Washington, which office on July 25, 1941, determined after investigation that the then supplier of gas at Fort Knox was able to meet all demands, including the increase that would be occasioned by the expected expansion at that Post.
At the time of Mr. Kalo’s visit to Colonel Windom the determination of the Quartermaster General on the other proposal was unknown to Colonel Windom.
*15 Mr.. Kalo submitted plaintiff’s proposal in writing, including the construction of a main transmission line about 76 'miles long with a pipe line capacity of from 12 to 16 million cubic feet of gas daily. The estimated cost of construction was stated as approximately $650,000, the construction to be completed within 45 days after receipt of pipe.
Since it was proposed to furnish gas at 25 cents per thousand cubic feet, which would effect a considerable saving to the War Department, Colonel Windom was directed by his superior to take the proposal to Washington for discussion with the Office of the Quartermaster General. That office advised Colonel Windom to submit the proposal in the form of a contract. It was prepared in the form of a bid by plaintiff under date of September 22, 1941. The proposed contract, signed by plaintiff as the bidder, but not accepted by the defendant, was forwarded by Colonel Windom on September 22, 1941, to the Office of the Quartermaster General with a recommendation that it be given consideration and approval and returned at the earliest possible date. A statement to the effect that information had been received from the Commanding Officer at Fort Knox that the present gas supply was inadequate to meet the increased demands of Fort Knox accompanied the proposed contract.
About October 10, 1941, plaintiff was advised by Colonel Windom that priority assistance for obtaining pipe and other materials which Mr. Kalo had said at his first conference would be necessary would not be given by the War Production Board. Mr. Kalo on October 10 advised Colonel Windom in writing that priority assistance was not necessary, as sufficient used pipe had been located.
On October 18,1941, the Office of the Quartermaster General sent a radiogram to the Zone Constructing Quartermaster advising that no contract should be executed until the pipe line was completed, but indicating that the form of the contract would be satisfactory provided certain amendments were made in the proposed liquidated damage clause.
Colonel Windom conveyed this information by letter to the plaintiff and advised that a contract for supplying natural gas at Fort Knox, Kentucky, embodying his proposal, subject to the changes prescribed by the Quartermaster General, *16 would be entered into upon completion of the necessary pipe line and other equipment.
Mr. Kalo endeavored to locate pipe and other materials for the construction of the line. The corporation was without funds to finance the line and therefore sought financial assistance. Mr. Kalo wrote Fullerton and Company of Columbus, Ohio, which company considered various means of securing funds for the construction of the line and contacted a number of investment houses, but the vice president of the company, who handled the matter, did not think there was anything definite to offer to any investment house for a firm commitment as to finances. There followed other conversations and letters along the same line.
On May 24, 1942, Colonel Windom was transferred from Columbus and thereafter did not have any contact with Mr. Kalo, nor did he have any further relation with the matter of supplying gas to Fort Knox.
Other correspondence followed in which Mr. Kalo sought to have a contract substituted for the letter of intent or commitment. The Office of the Chief of Engineers, which had succeeded to certain duties previously under the Office of the Quartermaster General, replied to the effect that before the request could be acted upon plaintiff must submit evidence of permission to construct the pipe line in the form of an approved War Production Board application bearing the approval of the Office of War Utilities.
Some time later plaintiff submitted to the War Production Board an application for a permit to construct a pipe line which application was denied by the Office of War Utilities of the War Production Board on October 23, 1943. A copy of the letter denying the application was received in the Office of the Chief of Engineers, which office under date of November 9,1943, advised plaintiff that in view of the denial on the part of the regulatory body the letter of intent issued October 24, 1941, and embracing purchase of gas upon completion of the proposed gas line, was “hereby withdrawn and terminated.”
Mr. Kalo did not give up. He communicated with the [Repairs and Utilities Branch of the War Department at Columbus, Ohio, with further regard to the matter of supplying *17 gas to Fort Knox, and in response that office informed plaintiff that no encouragement could be given to its proposal, and on April 21,1944, advised it in writing that tlie letter of intent had been withdrawn and in the letter repeated its termination and withdrawal of the letter of intent.
On February 15, 1946, plaintiff filed with the Contract Settlement Office at Columbus, Ohio, a settlement proposal, together with exhibits, one of which itemized the expenses, in the amount of $50,801.98, purportedly incurred by the company from September 1941 to April 1944 in preparing for the construction of a pipe line to Fort Knox. It also set out anticipated profits from one year’s operation of the pipe line amounting to $212,630. It also included in the proposed settlement an item of settlement expense of $6,000. The settlement proposal was forwarded to the Chief of Engineers who replied that since it did not appear that a definite contract was entered into by the parties, or that any rights accrued to the General Gas Pipe Line Corporation incident to the negotiations, the claim for settlement was denied. Plaintiff appealed to the Appeal Board of the Office of Contract Settlement, which affirmed the action taken by the Chief of Engineers. The findings of fact made by the Office of the Chief of Engineers and submitted to plaintiff are set out in finding 12.
We have been unable to find any basis for holding the defendant liable for any so-called damages to the plaintiff. From the time of its incorporation in 1936 to 1944 plaintiff corporation had no income from any operation in which it was engaged, and it was not engaged in any business activity other than this proposed pipe line. No salaries were paid to any officers or employees of the company during that period.
There was no contract for the construction of a pipe line. Plaintiff was not able to secure the finances necessary to construct the pipe line and made no apparent progress looking toward that end.
Plaintiff was neither ready nor able to supply gas to Fort Knox or even to construct a pipe line for that purpose. United States v. Penn Foundry and Mfg. Co., 337 U. S. 198.
There are other reasons which will be apparent from a *18 reading of our findings of fact why plaintiff failed to bring itself sufficiently within the terms of the Contract Settlement Act to entitle it to recover.
Even if plaintiff had established its right to recover, the proof is wholly insufficient as to the damages which it may have suffered, and the method of proving them was likewise insufficient. In fact, some of the evidence is very questionable.
Defendant filed a counterclaim. We don’t know exactly why. Perhaps it suffered from irritation.
The alleged basis for the counterclaim is the amount the Government would have saved if the pipe line had been completed and the gas furnished at 25 cents per thousand cubic feet, but since the Government contends, and prevails in its contention, that there was no contract, it is difficult to find that it could recover on a contract which it alleged and proved did not exist.
The plaintiff is not entitled to recover, and the defendant is not entitled to recover on its counterclaim. Both the petition and the counterclaim are dismissed.
Howell, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.